```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
In re                                    CV-05-5499 (CPS)

    BRIDGE TO LIFE, INC.
                                         Chapter 11
                Debtor.                  Case No. 05-19154 (jf)

----------------------------------X
BRIDGE TO LIFE, INC.,

        Debtor-Appellant,

    -against-                            MEMORANDUM OPINION
                                         AND ORDER
WILLIAM LUCADAMO,

        Creditor-Appellee.
----------------------------------X
```

SIFTON, Senior Judge.

This case is before the Court on appeal from an order of United States Bankruptcy Court for the Eastern District of New York. That decision denied Debtor-Appellant Bridge to Life's motion for reconsideration of a previous order dismissing its Chapter 11 bankruptcy case. For the reasons set forth below, the bankruptcy court's denial of Bridge to Life's motion for reconsideration is affirmed.

## BACKGROUND

The facts of this case, which are undisputed, are more fully set forth in Bankruptcy Judge Jerome Feller's prior decision in this case. *See In re The Bridge to Life, Inc.*, 330 B.R. 351 (Bankr. E.D.N.Y.2005). The facts pertinent to the present motion

are summarized below.

Debtor-Appellant Bridge to Life, Inc. ("Bridge") is a not-for-profit corporation with its principal place of business in Queens, New York. Eleanor L. Ruder ("Ruder") is its founder and executive director. Appellee William Lucadamo ("Lucadamo") formerly served as a member of Bridge's board of directors and as its treasurer. Bridge provides assistance to pregnant women––such as counseling, clothing, and baby furnishings––in order to encourage them not to undergo abortion.

On January 15, 2002, Bridge opened a Residence Home for expectant women. Ruder believed the Residence Home to be a drain on the corporation's finances, and accordingly opposed its opening. On the other hand, Lucadamo, a major benefactor of Bridge, supported the Residence Home and its employees. Lucadamo also guaranteed the mortgage on Bridge's most valuable asset, a parcel of real property located in Fresh Meadows, New York (the "Fresh Meadows Property").

On June 6, 2002, Bridge held an election of board members, which, under Bridge's by-laws is by a majority vote of the existing board. The vote to re-elect Lucadamo to the board was tied 4-4 when Lucadamo exercised a proxy on behalf of an absent board member in his own favor. At another meeting, held on July 23, 2006, the board declared Lucadamo's re-election invalid and held a new vote. Lucadamo, maintaining that he was already re-

elected at the June 6 meeting, declined to participate as a candidate. His vacancy was then filled by another.

On August 15, 2002, Lucadamo commenced a lawsuit against Bridge in the Supreme Court of the State of New York, County of Queens ("Lucadamo State Court Action"). The complaint contained three causes of action: (1) a demand that Bridge be directed to transfer $57,304.34 from its general accounts to its Residence Home's accounts, (2) an injunction prohibiting Bridge from closing the Residence Home, and (3) judicial confirmation that Lucadamo was properly re-elected to the board of directors on June 6, 2002. On October 1, 2002, Lucadamo and Bridge entered into a stipulation which was so ordered by Justice Janice A. Taylor (the "Stipulation"). The Stipulation provided, *inter alia*, that (1) the Lucadamo State Court Action would be referred to a referee to hear and to make a recommendation to Justice Taylor, (2) the Residence Home would remain open, and (3) the Residence Home employees would be paid.

In May 2003, Bridge ceased making salary payments to the Residence Home employees in violation of the Stipulation. Bridge challenged the validity of the Stipulation before Justice Taylor, but Justice Taylor rejected the challenge and held Bridge in contempt in October 2003.[1] Bridge was given 30 days to purge its

---

[1] The Stipulation was also upheld on appeal by the Appellate Division, Second Department.

contempt by paying the employees. When Bridge failed to do so, Justice Taylor awarded Lucadamo a judgment in the amount of $41,830.00 for his legal fees ("Lucadamo Sanctions Judgment"). The Residence Home employees commenced a separate action against Bridge ("Employees' State Court Action").

Bridge appealed the Lucadamo Sanctions Judgment to the Appellate Division, Second Department, but was unable to qualify for an appeal bond. A New York City Sheriff served Bridge with notice of execution of the Lucadamo Sanctions Judgment on May 7, 2004 seeking to satisfy the judgment by the sale of the Fresh Meadows Property.

On May 11, 2004, Ruder filed a Chapter 11 bankruptcy petition on behalf of Bridge ("First Chapter 11 Case"). Bridge removed the third cause of action in the Lucadamo State Court Action to the bankruptcy court and stated that it intended to challenge the Lucadamo Sanctions Judgment and the Residence Home employees' salary claims in the bankruptcy forum. Lucadamo moved to dismiss the First Chapter 11 Case on two grounds: (1) Ruder lacked the authority to file a Chapter 11 petition on behalf of Bridge, and (2) the Chapter 11 filing was a litigation tactic in a two-party dispute and was filed in bad faith. The bankruptcy court held a hearing on the motion to dismiss on November 4, 2004, and at the hearing, Bridge consented to dismissal of its First Chapter 11 Case *with prejudice*. On November 30, 2004,

Bankruptcy Judge Feller entered an order dismissing the First Chapter 11 Case with prejudice ("First Dismissal Order").

On May 31, 2005, Justice Taylor adopted the referee's recommendation to dismiss the Lucadamo State Court Action in its entirety. In order to enforce payment of the Lucadamo Sanctions Judgment, a sheriff's sale of the Fresh Meadows Property was scheduled for June 8, 2005. On June 7, 2005, Bridge filed another Chapter 11 petition ("Second Chapter 11 Case") in violation of the First Dismissal Order. On June 10, 2005, Bankruptcy Judge Feller dismissed the Second Chapter 11 Case *sua sponte* as having been filed in "blatant violation" of the First Dismissal Order ("Second Dismissal Order").

Bridge did not file an appeal of the Second Dismissal Order with this court; rather, Bridge moved the Bankruptcy Court for reconsideration of that order or, in the alternative, for a stay pending appeal.[2] Bankruptcy Judge Feller denied both motions. In so ruling, Bankruptcy Judge Feller reasoned that the First Dismissal Order, which dismissed the First Chapter 11 Case "with prejudice" to refiling, operated as an injunction against filing subsequent bankruptcy petitions and Bridge could not file a subsequent bankruptcy petition without first obtaining permission

---

[2] Although Bridge called its motion a "Motion for Reinstatement," Bridge filed the motion pursuant to Federal Rule of Civil Procedure 59(e), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023. Accordingly, the bankruptcy court deemed the motion a motion for reconsideration pursuant to Fed.R.Civ.P. 59(e).

from the bankruptcy court. Bankruptcy Judge Feller further reasoned that even if the First Dismissal Order had somehow expired, the Second Dismissal Order was warranted because Bridge filed the petition in bad faith. Finally, Bankruptcy Judge Feller denied the motion for stay pending appeal because apart from the caption of the motion, Bridge made no further reference to a stay pending appeal in its papers or at oral arguments; thus, Bridge had failed to demonstrate that there was a likelihood of success on the merits or that it would suffer irreparable harm if the stay was not granted.

Presently before the Court is Bridge's appeal from the bankruptcy court's denial of its motion for reconsideration. For the reasons that follow, the bankruptcy court's decision is affirmed.

## DISCUSSION

Normally, when reviewing decisions of the Bankruptcy Court, District Courts apply a de novo standard of review of the Bankruptcy Court's conclusions of law and review a Bankruptcy Court's findings of fact under a clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990). Here, however, it is not disputed that appellant Bridge to Life failed to appeal the Second Dismissal Order, and is only appealing the denial of the motion

for reconsideration of that order. The standard of review of a bankruptcy court's denial of a motion for reconsideration is abuse of discretion. *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 249 (2d Cir.1997); *In re Johansmeyer*, 231 B.R. 467, 469 (E.D.N.Y.1999); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 194 B.R. 728, 731 (S.D.N.Y.1995); *In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y.1993). "A court abuses its discretion where 'it ignore[s] 'a material factor deserving significant weight,' relied upon 'an improper factor,' or made 'a serious mistake in weighing' proper factors.'" *In re Johansmeyer*, 231 B.R. 467, 469 (E.D.N.Y.1999); *quoting In re Lambeth Corp.*, 227 B.R. 1, 6-7 (1st Cir. BAP 1998).

Bridge makes several arguments in support of its appeal: (1) a bankruptcy judge, by order of dismissal with prejudice, may not permanently bar a debtor from refiling; (2) a bankruptcy judge, by order of dismissal with prejudice, may not bar a debtor from refiling for more than six months; (3) the judicially created "bad faith filing" doctrine under Bankruptcy Code Section 1112(b) was eliminated by 1991 and 1992 decisions of the United States Supreme Court holding that federal courts may not add requirements not found in the Bankruptcy Code of 1978; (4) Congress deliberately omitted the "good faith filing" requirement for corporate reorganization petitions when it first adopted the

new Bankruptcy Code in 1978 and created the new Chapter 11; (5) a corporation facing financial disaster because it cannot raise sufficient cash for an appeal bond is permitted to file a Chapter 11 petition in order to preserve its equity in its assets; and (6) Bridge was facing financial disaster because it could not raise sufficient cash for an appeal bond, thus permitting it to file a Chapter 11 petition in good faith.[3]

With respect to nearly all of the arguments raised by Bridge, the Second Circuit Court of Appeals' decision in *In re*

---

[3] It its memorandum of law in support of the appeal, Bridge includes the following nearly-identical paragraph at the end of each argument: "Since the Bankruptcy Court failed to address this Point in its decision, it is not ripe for appellate review the there [sic] should be a remand for further proceedings pursuant to the holding in *In re Sonnax Industries, Inc.*, 907 F2d 1280 (2d Cir., 1990)." Bridge does not cite any page numbers or passages in *Sonnax Industries* and does not further explain its argument. Bridge's attorney has subsequently notified the Court that he intended to cite *Mazzeo v. Lenhart*, 167 F.3d 139 (2d Cir.1999) rather than *Sonnax Industries*. The district court in *Sonnax Industries* was not reviewing a final order; rather the district court was acting under Section 157(d), which authorizes district courts to "withdraw [from the bankruptcy court], in whole or in part, any case or proceeding referred under [Section 157]." The Court of Appeals thus held that it did not have jurisdiction to review the district court's decision pursuant to Section 158; rather it had jurisdiction under a separate section of the Bankruptcy Code. 28 U.S.C. § 158(a), pursuant to which Bridge brings the present appeal, authorizes district courts to review final orders of bankruptcy courts. The parties in the present action do not dispute that the bankruptcy court's order was a final order. Accordingly, *Sonnax Industries* is inapplicable here. Bridge's reliance on *Mazzeo* is similarly unavailing. In that case, the district court and court of appeals were asked to determine whether the bankruptcy court properly granted creditors relief from the automatic stay for the limited purpose of permitting a trial court to determine the validity and amount of the creditors' securities law claims. The bankruptcy judge granted this relief orally, making "sparse factual findings" and engaging in little, if any, legal reasoning. In holding that the bankruptcy court's order did not allow for meaningful review, Court of Appeals stated, "the bankruptcy court's statements do not provide us with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate, or to determine whether the lifting of the stay was an abuse of discretion." *Mazzeo*, 167 F.3d at 143. In the present case, the Bankruptcy Judge Feller has laid out in detail his factual findings and legal reasoning, providing a more than adequate record for meaningful review. Bridge has not provided, nor is this Court aware of any, other authority for the proposition that a bankruptcy court's final order is not reviewable by the district court if the bankruptcy court did not address each of the arguments raised by the debtor. Moreover, as discussed below, Bankruptcy Judge Feller did, in fact, address most of the legal arguments raised by Bridge.

*Casse*, 198 F.3d 327 (2d Cir.1999) is instructive. In that case, in order to frustrate attempts by a creditor to foreclose on their property, Robert E. Casse and his wife Carol J. Casse (the "Casses") filed a series of bankruptcy petitions. After unsuccessfully filing two Chapter 11 bankruptcy petitions, the Casses, on April 16, 1997, filed a third Chapter 11 petition. At a hearing on the Trustee's motion to dismiss the case, the Casses agreed to dismissal of the case with prejudice. On July 16, 1997 Bankruptcy Judge Feller signed an order dismissing the case "with prejudice." In an effort to obtain yet another stay of the foreclosure of their property, on September 17, 1997, Robert Casse filed a Chapter 13 petition. By written opinion and order, dated April 21, 1998, the bankruptcy court dismissed the Chapter 13 case *nunc pro tunc* to September 17, 1997. The district court affirmed the dismissal, and an appeal to the Court of Appeals followed.

In affirming the decision, the Court of Appeals reached several conclusions applicable to the matter at hand. First, the Court upheld the bankruptcy court's determination that the Casses acted in bad faith. The Court reasoned, "[w]e have no reason to disturb that finding. Given the undisputed chronology of scheduled Property foreclosure sales and bankruptcy filings,...the bankruptcy court's finding of bad faith can hardly be characterized as clearly erroneous." *Casse*, 198 F.3d at

332-333.

Next, with regard to the term "with prejudice," the Court of Appeals adopted the holding of the Fourth Circuit Court of Appeals in *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933 (4th Cir.1997), in concluding that "if a bankruptcy order of dismissal is ambiguous in this regard, the bankruptcy court's interpretation of its own order 'warrants customary appellate deference. The bankruptcy court was in the best position to interpret its own orders.'" *Casse*, 198 F.3d at 333, citing *Tomlin*, 105 F.3d at 941. The Court of Appeals thus deferred to Bankruptcy Judge Feller's own interpretation of the words "with prejudice," which included prejudice to filing *any* bankruptcy petition (whether under Chapter 11, 13, or any other chapter of the code) until the creditor had an opportunity to foreclose on the property. *Id*. at 333-334.

Next, the Court of Appeals held that such an interpretation was allowable under the appropriate sections of the Bankruptcy Code. 11 U.S.C. § 1112(b) provides, in relevant part, that "on request of a party in interest...the [bankruptcy] court [may] dismiss a case under this chapter [for] cause." 11 U.S.C. § 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or

>    appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 349(a) provides:

>    Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Finally, 11. U.S.C. § 109(g), referred to in § 349(a), provides:

>    Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if--
>
>    (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
>    (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

The Court of Appeals in *Casse* held that, taken in conjunction, these sections of the Bankruptcy Code authorized Bankruptcy Judge Feller's prohibition on future bankruptcy filings. The Court recognized that there is conflict among the circuits as to the scope of section 349(a), and whether the provisions of that section contradict those of § 105. The Tenth Circuit Court of Appeals has held that while § 349(a)"gives bankruptcy courts discretion to determine whether there is 'cause' to dismiss a case with prejudice," the section "does not

deny a debtor all future access to bankruptcy court, except as provided in § 109(g)," which in turn contains a 180-day temporal limit. *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1103 (10th Cir.1991). Thus, the Tenth Circuit Court of Appeals "also concluded in *Frieouf* that its construction of § 349(a) precluded the application of § 105(a) to justify a longer prohibition against future filings." *Casse*, 198 F.3d at 336. The *Casse* Court went on to note that "[w]hile lower courts in the Tenth Circuit have perforce followed *Frieouf* with a reluctant obedience, no other circuit has adopted its reading of the Bankruptcy Code, and the Fourth Circuit rejects it, and so do all the lower courts which sit outside the Tenth Circuit." *Id*. at 336-337. In *Tomlin*, the Fourth Circuit Court of Appeals held that "§ 349 was never intended to limit the bankruptcy court's ability to impose a permanent bar to discharge that would have res judicata effect. Rather, the language of § 349, as amended, seems to make clear that the court has the power to order such a sanction in circumstances other than those dealt with by...§ 109(g)." 105 F.3d at 938. The *Casse* Court, allying itself with the *Tomlin* Court and various district courts, held that §§ 105(a) and 349(a) authorized bankruptcy courts "to prohibit a serial filer from filing petitions for periods of time exceeding 180 days. We join those courts in concluding that § 109(g) does not impose a temporal limitation upon those other sections." 198 F.3d at 336.

The Court concluded that the § 349(a) phrase, "Unless the court, for cause, orders otherwise," modifies the clause before the semi-colon as well as the clause after the semi-colon. The result is that if a bankruptcy court dismisses a case *for cause*, § 109(g) may not apply to that case.

> This reading of § 349(a) means that a debtor may be prejudiced from filing subsequent bankruptcy petitions under two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to debtors' case.
>
> Thus, this court finds that, so long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the terms of § 349(a) or, for that matter, § 109(g).

Casse, 198 F.3d at 340. Accordingly, with respect to Casse' case, the Court concluded:

> While the bankruptcy court's July 16, 1997 order did not specify the Code sections upon which it was based, or the scope and duration of the bar on future filings implicit in the phrase "with prejudice," these omissions avail the debtor nothing. Their only effect was to make the order ambiguous; and the ambiguities were resolved by the bankruptcy court's April 21, 1998 opinion, to which we may refer, as did the Fourth Circuit in *Tomlin*'s comparable circumstances.
>
> Neither the debtor nor his counsel asked the bankruptcy court for clarification of the July 16, 1997 order's effect, either when the order was issued or before filing the Chapter 13 petition. A bankruptcy practitioner might have considered at least the possibility that the order of dismissal "with prejudice" implicated one or both of §§ 105(a) and 349(a). Had the court's clarification been sought at those earlier times, Bankruptcy Judge Feller undoubtedly would have responded in the same terms he used subsequently in his April 21, 1998 opinion. Of course, such a prudent inquiry would have been against the nature of a serial filer determined to hold off a foreclosure; but the debtor's failure to inquire serves

> to mute the tones of outrage in which the present appeal is cast.

198 F.3d at 341.[4]

Applying the reasoning and holdings of *Casse* leads to a similar result in the present case. As was the case in *Casse*, Bridge consented to its Chapter 11 case being dismissed "with prejudice," and the bankruptcy court subsequently entered an order to that effect. Although the term "with prejudice" was ambiguous, Bridge did not ask for clarification, and Bankruptcy Judge Feller, in denying Bridge's motion for reconsideration, subsequently laid out his interpretation of the term. This Court must, as did the Court in *Casse*, defer to Bankruptcy Judge Feller's own interpretation of the ambiguous phrase. The bankruptcy court's decision makes clear that the court issued the dismissal orders because it found that Bridge had acted in bad faith in filing the petitions. *In re The Bridge to Life, Inc.*, 330 B.R. 351, 354 (Bankr. E.D.N.Y.2005) (stating, "[a]n interdiction against refiling was considered necessary and appropriate by this Court because the First Chapter 11 Case was commenced not to reorganize, restructure or rehabilitate, but to impermissibly use Chapter 11 as a weapon in a two-party dispute.

---

[4] Because the Second Circuit in *Casse* explicitly rejected the Tenth Circuit's reasoning and stated that it was the minority view, Bridge states, "[t]hat argument expressly concedes the existence of a conflict among the Circuit Courts on the issue, and, implicitly, the lack of controlling Supreme Court precedent." This court is bound by decisions of the Second Circuit Court of Appeals.

And, it appeared likely to this Court that Bridge might again resort to improper use of Chapter 11," and "Bridge has no legally cognizable need for Chapter 11. Bridge has the ability to pay the amount of the Lucadamo Sanctions Judgment and the wage claims of the Residence Home employees from its equity in the Fresh Meadows Property. Indeed, Bridge has entered into a contract to sell the Fresh Meadows Property for $550,000, a sum which is about $250,000 in excess of the mortgage. And, any disputes related to these claims or other Lucadamo related disputes can and should be resolved in the state courts").[5] Clearly, Bankruptcy Judge Feller dismissed both bankruptcy petitions for cause. The First Chapter 11 Case was dismissed because it was filed in bad faith, and the Second Chapter 11 Case was dismissed because it was filed in violation of the First Dismissal Order, or, in the alternative, because it was filed in bad faith. Given the nature and timing of the filings, the bankruptcy court's finding that the petitions were filed in bad faith cannot be considered "clearly

---

[5] Bridge argues that "the judicially created the [sic] 'bad faith filing' doctrine under Code Section 1112(b) is not still viable after the 1991 and 1992 decisions of the United States Supreme Court holding that the federal courts may not add requirements not found in the Bankruptcy Code of 1978." The Supreme Court cases to which Bridge refers are *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) and *Toibb v. Radloff*, 501 U.S. 157 (1991). In support of its proposition, Bridge "totally adopts the analysis and holding of" a District of Massachusetts bankruptcy court case, *In re Victoria Ltd. Partnership*, 187 B.R. 54 (Bankr. D.Mass.1995). However, as noted above, the *Casse* case, which was decided in 1999 upheld the bankruptcy judge's determination of bad faith. Moreover, the Second Circuit Court of Appeals has explicitly recognized that "[a] bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*." *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir.1997).

erroneous."[6] Accordingly, consistent with the *Casse* decision, this Court will not disturb those findings.[7]

Because the bankruptcy court dismissed the bankruptcy petitions for cause, § 109(g) and its temporal limits do not apply.[8] Consistent with the ruling in *Casse*, this Court need not determine whether a bankruptcy court could ever *permanently* bar a debtor from filing a bankruptcy petition. See *Casse*, 198 F.3d at 334, n.4 (stating, "it is clear from the bankruptcy court's decision on April 21, 1998 that it only intended to bar temporarily the debtor from filing another petition before [the creditor] had an opportunity to foreclose on the Property....We therefore need not reach the question of whether a bankruptcy court could permanently preclude a serial filer from filing bankruptcy petitions."). Similarly, in the present case, it is clear from the decision denying Bridge's motion for

---

[6] This Court finds no merit in Bridge's argument that because it could not pay the appeal bond, it was automatically entitled to file a Chapter 11 petition, notwithstanding any good faith requirement. As an initial matter, Bridge has not provided any persuasive authority for its proposition. Moreover, Bridge did not file for bankruptcy after it was unable to pay the appeal bond; rather, it filed for bankruptcy after it was served with notice of execution of the Lucadamo Sanctions Judgment. Finally, as Bankruptcy Judge Feller noted, Bridge is more than able to satisfy the judgment by selling the Fresh Meadows Property.

[7] Appellee Lucadamo argues that Bridge's arguments regarding the bad faith filing doctrine are moot because Bridge has sold the Fresh Meadows Property and paid all of its creditors. Bridge counters, "[f]indings of bad faith are correct or incorrect as of the historical dates involved and Appellant has every right to contest those finding [sic] on direct appeal because its good name is directly involved." I need not address the mootness issue because I find, in any event, that the bankruptcy court's finding of bad faith was not clearly erroneous.

[8] Accordingly, Bridge's arguments that the holding in *Casse* does not apply to corporations, given the language of § 109(g) referring to "individual[s] or family farmer[s]" is irrelevant.

reconsideration that Bankruptcy Judge Feller intended to bar Bridge from filing future petitions as weapons in this two-party dispute. Accordingly, I need not decide whether a permanent bar is permissible.

In light of the above, Bankruptcy Judge Feller's denial of Bridge's motion for reconsideration cannot be seen as an abuse of discretion. Accordingly, the bankruptcy court's denial of Bridge's motion for reconsideration is affirmed.[9]

**CONCLUSION**

For the reasons set forth above, the bankruptcy court's denial of Debtor-Appellant Bridge to Life's motion for reconsideration is affirmed.

SO ORDERED.

Dated : Brooklyn, New York
May 16, 2006

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge

---

[9] Because Bridge has failed to argue why a stay pending appeal should have been granted, that portion of the bankruptcy court's decision, to the extent it is now appealed, is also affirmed.